IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs June 2, 2026

## STATE OF TENNESSEE v. NICKALOUS LADD A/K/A NICKALOUS CLARK

**Appeal from the Criminal Court for Shelby County**
**No. 24-04205          Chris Craft, Judge**

_____

**No. W2025-01494-CCA-R3-CD**

_____

The Defendant, Nickalous Ladd a/k/a Nickalous Clark, was convicted by a Shelby County Criminal Court jury of convicted felon in possession of a firearm, a Class C felony, and was sentenced by the trial court as a Range IV career offender to fifteen years at 60% in the Tennessee Department of Correction. The sole issue the Defendant raises on appeal is whether the evidence is sufficient to sustain his conviction. Based on our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and JILL BARTEE AYERS, JJ., joined.

Charles W. Gilchrist, Jr., Memphis, Tennessee, for the appellant, Nickalous Ladd a/k/a Nickalous Clark.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman and Kelly M. Telfeyan, Assistant Attorneys General; Steve Mulroy, District Attorney General; and Scot Bearup and Jack Gould, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTS

According to the State's proof at trial, on the night of August 29, 2019, the Defendant was driving in Memphis in his girlfriend's vehicle with his gun underneath the

driver's seat and his girlfriend in the front passenger seat. The Defendant ran a red light, and a police officer pulled his patrol vehicle behind the Defendant and activated his lights and siren. The Defendant continued driving for several more minutes until he reached his mother's home, where he unsuccessfully attempted to hide the gun in the vehicle's glove compartment. The gun accidentally discharged, and the Defendant's girlfriend was struck by the bullet. The Defendant then threw the gun into the bushes beside his mother's front door, where it was retrieved by a police officer.

The Defendant was indicted for convicted felon in possession of a firearm based on his possession of the gun and his prior felony drug conviction.[1] At his December 2024 trial, the Defendant's former girlfriend, Katrina Farmer, testified that she and the Defendant were together in a Memphis hotel on the evening of August 29, 2019. They arrived at the hotel in her vehicle, and the Defendant brought his gun with him. At approximately 10:00 or 10:30 p.m., the Defendant received a phone call and said he had to go somewhere. She accompanied the Defendant when he left and rode in the front passenger seat of her vehicle while the Defendant drove. The Defendant brought his gun with him from the hotel room and placed it underneath the driver's seat as he "normally" did.

Ms. Farmer testified that the Defendant drove through a red light at an intersection where a police officer was "[s]itting [in his patrol vehicle] on [a] store lot." She recalled that the police officer got behind them, activated his lights and siren, and then caught up with them and ordered the Defendant to pull over. The Defendant, however, continued driving for an additional two to three minutes until he reached his mother's home, where he pulled up to the curb. The Defendant then removed his gun from underneath the driver's seat and attempted to hide it in the glove compartment, but "that didn't work." As the Defendant was removing the gun from the glove compartment, the gun "went off[,]" and Ms. Farmer was struck by a bullet that passed through her left thigh and into her right thigh.

Ms. Farmer testified that "everything unraveled so fast" after that. She was unsure of the sequence of events but thought that the Defendant at some point exited her vehicle and ran to the front of his mother's home. She did not know whether the gun belonged to the Defendant's brother and could not recall the Defendant's brother having visited the Defendant in the hotel room that night. She remembered, however, that she and the Defendant had been "riding around" with the Defendant's brother earlier that day.

Former Memphis Police Department ("MPD") Officer Kendall Oliver testified that on the night of August 29, 2019, he was a patrol officer and was at a corner gas station in

---

[1] The delay from the date of the offense to the date of the indictment appears from the record to be due to a dismissal of the original indictment for some defect, and subsequent reindictment on November 14, 2024. The new arraignment and trial occurred on the same day. Neither the original indictment, nor the date of its dismissal, is included in the record.

the Whitehaven neighborhood when he saw the Defendant run the red light at the intersection. He said he activated his lights and siren, but the Defendant kept driving at a slow speed for another three to five minutes until he came to a stop in front of a house. The Defendant got out of the driver's seat of the vehicle and ran toward the house, and Ms. Farmer got out of the passenger seat saying that she had been shot. The Defendant then came back to the vehicle saying, "It was a mistake. It was a mistake."

Officer Oliver testified that four or five other police officers responded to the scene, including Lieutenant Hardaway, who found a gun beside the front porch. Officer Oliver identified a photograph of the semiautomatic handgun with an extended magazine that was on the ground beside the front porch, which was admitted as an exhibit and published to the jury. He also identified a flash drive that contained his "in-car" video, his body-worn camera video, and a compilation of the in-car and body-worn camera videos, which was admitted as an exhibit and published to the jury during his testimony. He stated that the gun was found inside a bush, "immediately to [the] left" of where the Defendant was standing on the porch.

Officer Oliver agreed that the Defendant appeared upset when he ran back to the vehicle and testified that the Defendant said, "It was a mistake. I didn't mean to shoot my girlfriend." Officer Oliver could not recall how long it took for Lieutenant Hardaway to find the gun and testified that he never saw the Defendant in possession of the gun, did not know if the Defendant was tested for gunshot residue, and did not know if the gun was tested for fingerprints.

MPD Lieutenant Bryon Hardaway, who responded to the shots-fired call from Officer Oliver, testified that Officer Oliver reported that the suspect had shot someone and "thrown a gun before he . . . went into the home at that address." Lieutenant Hardaway and other officers began searching for the weapon, and within a "matter of minutes[,]" Lieutenant Hardaway found it behind a bush "just left of the door."

MPD Lieutenant Christopher Pennington, who transported the Defendant to the jail on the morning of August 30, 2019, testified that the Defendant told him that he tried to hide a weapon and shot his girlfriend. He identified the flash drive containing his body-worn camera video of the conversation, which was admitted as an exhibit and published to the jury. He acknowledged that the last statement made on the body-worn camera video was that the Defendant and his girlfriend "were both trying to hide the weapon."

As its final proof, the State introduced a certified copy of the Defendant's 2006 Shelby County Criminal Court conviction for possession of less than .5 grams of cocaine with the intent to sell, a Class C felony.

The Defendant elected not to testify and rested his case without presenting any evidence. Following deliberations, the jury convicted him of the indicted offense.

**ANALYSIS**

The Defendant contends that the State failed to prove that he was in possession of a firearm because none of the police officers testified that they saw him with the gun. The State argues that the evidence showed the Defendant's actual and constructive possession of the gun and was sufficient to sustain the conviction. We agree with the State.

When the sufficiency of the evidence is challenged on appeal, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-91 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

Therefore, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from it. *State v. Reynolds*, 635 S.W.3d 893, 914 (Tenn. 2021) (citation omitted). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

The guilt of a defendant, including any fact required to be proven, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). The standard of review for the sufficiency of the evidence is the same whether the conviction is based on direct or circumstantial evidence or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

Tennessee Code Annotated section 39-17-1307(b)(1)(B) provides that "[a] person commits an offense who unlawfully possesses a firearm" and "[h]as been convicted of a felony drug offense." Possession may be either actual or constructive. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001). "While actual possession refers to physical control over

an item, constructive possession requires only that a defendant have the power and intention . . . to exercise dominion and control over the item allegedly possessed." *State v. Fayne*, 451 S.W.3d 362, 370 (Tenn. 2014) (internal quotation marks omitted) (quoting *State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013)).

Viewed in the light most favorable to the State, the evidence was sufficient to establish the Defendant's actual and constructive possession of the firearm. Although none of the police officers saw the Defendant with the gun, Officer Oliver's in-car and body camera videos show that a few seconds after Ms. Farmer exited the vehicle saying that she had been shot, the Defendant ran up to the porch of his mother's home. Within minutes of Lieutenant Hardaway's search, Lieutenant Hardaway found the gun in the bushes to the immediate left of where the Defendant had been standing. In addition, Ms. Farmer testified about the Defendant's actual possession of the gun, and the Defendant himself admitted his possession of the gun when he told the police officers that his shooting of Ms. Farmer was accidental. We, therefore, affirm the Defendant's conviction for convicted felon in possession of a firearm.

## CONCLUSION

Based on our review, we affirm the judgment of the trial court.

s/ JOHN W. CAMPBELL
JOHN W. CAMPBELL, SR., JUDGE